Den, ex dem. Isaac Van Wagenen, *vs.* Isaac P. Brown.

1. If a mortgagee make a will devising all his interest in certain mortgaged premises, the devisee takes the same legal estate in the premises that the testator had at the date of the will, and such estate will not be affected by the subsequent acquisition of the testator of the equity of redemption by foreclosure or any other means.

2. Previous to the passage of the supplement to the Newark city charter, approved March 13th, 1851, a justice of the peace had no jurisdiction, and the collector no power to sell land for taxes, except in the ordinary cases of assessments in the names of the owners; and the supplement of 1851 did not affect any sale where the warrant was issued before the act took effect.

3. If a tax warrant is void, any sale made, or deed given by virtue thereof, will be void also.

The facts in this cause fully appear in the following state of the case, agreed upon by counsel:

This suit was brought for the recovery of three certain lots of land in the city of Newark, known as lots Nos. 74, 75 and 76 of the James Baldwin property, situate on the southwest corner of East Market and Adams streets. The declaration was in the common form, laying the demise on the 10th day of April, 1854, for the term of five years, &c. The ordinary consent rules being exchanged, the cause came on for trial at the Essex Circuit, before Mr. Justice Ogden, in February Term, 1855. The jury being impaneled and sworn, the plaintiff offered in evidence, in order to sustain the issue on his part, the following documentary title, that is to say:

1. The record of a deed of conveyance from James Baldwin and wife to William M. Brown and William A. Lum, bearing date the first day of November, 1835, acknowledged the 13th of November, 1835, and recorded the 16th day of November, 1835, whereby, for the consideration of $22,000, the said Baldwin and his wife conveyed to the said Brown and Lum, in fee simple, a tract of land containing 13 acres and 52-hundredths of an acre,

Van Wagenen v. Brown.

which it was admitted comprised the premises in question.

2. The record of a deed of conveyance from the said William M. Brown and William A. Lum and their wives to James B. Thompson, bearing date the 25th day of October, 1836, acknowledged the 3d day of December, 1836, and recorded the 19th day of February, 1840, whereby, for the consideration of $7509.50, the said Brown and Lum and their wives conveyed to the said ·Thompson in fee simple, lots Nos. 22, 23, 26, 27, 65, 66, 67, 74, 75, 76, and eight other lots of the said James Baldwin property, including the premises in question, viz., lots Nos. 74, 75 and 76.

3. The record of a deed of conveyance from the said James B. Thompson and his wife to the said James Baldwin, bearing date the fourteenth day of February, in the year of our Lord one thousand eight hundred and forty, acknowledged the same day, and recorded on the nineteenth of the same month, and in the year last aforesaid, whereby it was expressed that the said Thompson and wife, in consideration of the amount due on a certain mortgage on the lots mentioned in the preceding conveyance, given by James B. Thompson and wife to William M. Brown and William A. Lum, and by them endorsed to James Baldwin, and for and in consideration of one dollar, &c., did grant, bargain, sell, release and convey to the said James Baldwin in fee simple the said lots mentioned in the preceding deed, including the three lots in question and other lots.

4. The record (from the surrogate's office) of the said James Baldwin's will, bearing date the tenth day of February, in the year eighteen hundred and forty, duly executed to pass real estate in New Jersey, and admitted to probate by the surrogate of Essex county on the 19th of July, 1841, a few days after testator's death, whereby the testator, among other things, devised as follows, that is to say :

" Whereas, I hold a mortgage, given by James B. Thompson and wife, on several lots, being part of the premises called Baldwin property, and I expect shortly to receive a conveyance for said premises in satisfaction of said mortgage, in which event I do give to my executors and to the survivor of them, and the heirs of the survivor, four of the lots in said mortgage contained, being designated on the map of said property as lots numbers 74, 75 and 76, and number 26, fronting on Market street, in trust, the three first-named lots to be used and appropriated as the site of a building for a free school, for the benefit of all poor children living between Ferry street and the river, and a lecture-room for religious worship ; and lot number 26 to be used and appropriated as a site for a dwelling-house, for the use of and to be occupied by the minister that may from time to time officiate in said room ; said lecture-room to be for the use of the denomination of Christians called Methodist Episcopal ; and until said school-house and lecture-room shall be built, I authorize my executors to lease or rent said lots, and preserve the income and the interest thereon, to be appropriated towards said building ; and I do also give to my said executors the bond and mortgage I now hold against David Smith, for twelve hundred dollars, dated August 22d, 1837, in trust, to be used and appropriated towards erecting the building above mentioned for a school-house and lecture-room ; and until such building is erected, the interest to accumulate and be used for that purpose."

And the said testator, by the said will, appointed Isaac Van Wagenen, the lessor of the plaintiff, and Jabez P. Pennington the executors and trustees of the said will, and by the record thereof it appeared that the lessor of the plaintiff proved the said will, but that the other said executor therein named renounced the probate thereof.

5. A release from the said Jabez P. Pennington to the lessor of the plaintiff in fee, bearing date the eighth day of April, in the year 1854, whereby the said Pennington released and quit-claimed all his right, title and interest

to the premises in question to the said lessor of the plaintiff.

It was admitted that James Baldwin, the grantor of the first deed, was seized and possessed of the premises in question at the time of giving the said deed first given in evidence ; and it appeared in evidence that at the time of making said will, and at the time of his death, the said James Baldwin held the said mortgage referred to in said will, which mortgage was given by James B. Thompson to the said Brown and Lum, and by them assigned to the said James Baldwin, and that the said mortgage remained uncanceled in the hands of the said Isaac Van Wagenen until July 3d, 1851, when he had it canceled of record at the request of Solomon Kaup, who had bought some of the property of the testator which was covered by this mortgage, and which he wanted cleared. The said mortgage was on the said lots 74, 75, and 76, and others, and was given to secure the payment of $3754.75 in three years from the date of the mortgage. And the said mortgage was dated October 25th, 1836, and was canceled of record July 3d, 1851.

The mortgage itself, and the registry thereof, were given in evidence. The plaintiff then rested.

Whereupon the defendant, by his counsel, moved for a non-suit, on the ground that whereas the lessor of the plaintiff claimed title only as devisee under the said James Baldwin's will, the said devise, so far forth as relates to the premises in question, was void and of no effect, inasmuch as the testator, at the time of making and executing the said will, had no sufficient estate in the said premises to enable him to devise the same. But the judge reserved the question for the consideration of the Supreme Court, subject to the condition that if the Supreme Court should be of opinion that the non-suit ought to have been granted, then that judgment of non-suit should be entered, in case a verdict should be found for the plaintiff.

The defendant in his defence, among other things,

relied on a tax sale of the premises in question, alleged to have been made under the authority of the city of Newark, on the 12th day of July, 1851, for the term of four years, for non-payment of the taxes assessed on said property, in the year 1850, and proved by the assessor of the fifth ward of the city of Newark for the latter year (in which ward the lots in question were situated), that the said lots were assessed to the estate of James Baldwin, deceased, at $200 each, and that a tax of one dollar, each, was assessed thereon, and produced in evidence the book of assessments, made by said assessor, which showed the same assessment and tax, and also produced in evidence the list of delinquent-tax payers for the same ward and year (showing the sum due from each), returned by the collector of said ward to William O. Ford, a justice of the peace of said city, residing in said ward; which list showed the sums due from each person assessed, and contained, among others, the name of the estate of James Baldwin as aforesaid, for the tax so assessed as aforesaid on the lots in question; and which list was verified by the affidavit of the said collector, thereto attached, wherein the said collector did depose and swear that the moneys, in said list mentioned had been duly demanded, or notice given or left at the usual place of residence of each delinquent who could be found, or who then resided in said fifth ward of the city of Newark aforesaid.

And the said defendant also produced in evidence the said justice's warrant issued upon the said return and list of delinquents, directed to the collector of arrears of said ward, reciting the said return and list, and commanding the said collector of arrears to cause the said sums of money therein contained, with the interest thereon, at the rate of six per cent. per annum, from the 20th day of October, 1850, and all lawful costs and fees, to be made and levied of the goods and chattels of the said delinquents in said list named, and from whom the same were due, by selling the same at public sale, by giving at least

four days' notice of the sale, by advertising in five of the most public places of the said city ; and in case sufficient goods and chattels could not be found whereon to levy, then to cause the whole, or the residue, to be made of the lands, tenements, hereditaments, and real estate in the city of Newark, of the person or persons, respectively, from whom the same were due, by selling the same, or any part thereof, for the shortest time or times for which any person would agree to take the same, and pay the tax or taxes, or the balance thereof, remaining unpaid, and the interest. thereon, a ᵈ all costs, fees and charges and expenses, as in and by the said warrant and list of delinquents (*pro ut* the same), among other things, may appear, which warrant bore date the 31st day of October, 1850.

And the said defendant further proved, by Moses B. Martin, the collector of arrears of said ward for the year aforesaid, that in pursuance of said warrant directed and delivered to him, he duly advertised the property to be sold, on the 12th day of July, 1851, and published the same in three daily newspapers published in Newark, the regular time required by law; and that, on the day and year last mentioned, he put up the said property for sale, and sold the said lots in question to one Andrew Lemassena for four years from the said day of sale, and executed a deed to said Lemassena accordingly therefor.

The defendant also produced in evidence and proved the said deed from the said collector of arrears to the said Lemassena, and an assignment by said Lemassena of his right, title, and interest in said lots to the defendant, Isaac P. Brown.

The court thereupon decided to reserve the question as to the sufficiency of the said evidence, but, for the purposes of the cause, instructed the jury that the said evidence was insufficient to establish the said tax sale. This question is, therefore, also reserved for the decision of the Supreme Court in banc.

It appeared, in the rebutting case of the plaintiff, that the lots in question were vacant, unimproved lots, and that after the decease of James Baldwin, the testator, and about 1846, Frederick Pilch, the pastor of the Bethel Church, and a Methodist Episcopal minister, by the advice of the lessor of the plaintiff, took possession of the lots in question, and enclosed them, and cultivated them until about 1851, when he left them in the possession of Isaac Baldwin, the testator's son, he, Pilch, the witness, having no further use for them until the church, as he said, saw fit to erect a building. Soon after he left, the fence was all taken down, and it appeared in evidence that the lots were afterwards, in 1852 and 1853, assessed in the hands of Isaac P. Brown, the defendant.

The jury rendered a verdict for the plaintiff, and the defendant obtained a rule to show cause why the verdict should not be set aside.

Argued at November Term, 1856, before the CHIEF JUSTICE, and Justices OGDEN, RYERSON and VREDENBURGH.

*Bradley* and *Whitehead*, for the rule.

*Frelinghuysen* and *Halsted*, contra.

The opinion of the court was delivered by

VREDENBURGH, J. This suit is brought to recover the possession of three lots in the city of Newark, known as Nos. 74, 75 and 76 of the James Baldwin property.

The plaintiff claimed title under the following clause in the will of James Baldwin, viz.: "Whereas, I hold a mortgage, given by J. B. Thompson, on several lots, being part of the premises called the Baldwin property, and expect shortly to receive a conveyance for said premises in satisfaction of said mortgage, in which event I do give to my executor (the lessor of the plaintiff) and his heirs four of the lots in said mortgage contained, being desig-

nated on the map of said property as lots Nos. 74, 75 and 76, being the lots in question in trust," &c.

The will is dated the 10th of February, 1840. The mortgage was then past due, and the testator out of possession.

The plaintiff further gave in evidence the deed to the testator in consideration of the mortgage, dated the 14th February, 1840, four days after the execution of the will. The defendant, upon this evidence, moved for a non-suit, upon the ground that at the date of the will the testator had no sufficient estate to enable him to devise the same; that a will does not, under the statute then in force, pass after-acquired lands.

Admitting, without expressing any opinion, this to be true, does the principle apply to the present case?

I do not understand this to be a devise of an estate which he expected afterwards to acquire, but of an estate which he then had, provided a certain thing happened in his lifetime. The language is, whereas I hold a mortgage upon lots 74, 75 and 76, in the event of, if I get a deed, I devise the lots in the mortgage. This is not a devise of any interest he was to get by the deed, but of any interest he had in the land at the date of the will, provided he should get a deed.

It has never been doubted that if a mortgagee in fee devise the mortgaged premises by a particular description, that his legal interest will pass. *Coote on Mortgages* 570, and cases there cited; *Ram on Wills* 202; *Ram on Assets* 425.

If, therefore, the title of the testator had remained unchanged until his death, the devisee would have taken under the will the testator's interest in the land at the date of the will, and proved title through the mortgage.

But it is contended that, by afterwards taking the deed, the testator's interest under the mortgage was extinguished or merged in the deed, and that the plaintiff, by pro-

ducing the deed, showed title out of himself, and in the heir, and thus ought to have been non-suited.

Was this the necessary result of the testator's taking the deed? His intention is obvious. Are we forced by well-settled principles of law to defeat it? Cannot still the devisee take the interest under the mortgage, and the heir the interest under the deed? Does the taking of the deed *ipso facto* revoke the will as to the mortgage interest, and extinguish the mortgage? For if taking the deed does not, by simple operation of law, annihilate the mortgage interest, the legal title, as against the heir, must, under our statute, vest in the devisee, whoever may be entitled to the beneficial interest under the mortgage. If the extinguishment of the mortgage be the necessary result of the equity of redemption and the mortgaged interest meeting in the same person, it must be so by mere operation of law, and consequently so in all cases and under all circumstances. But this has been decided in this state repeatedly the other way. *Den* v. *Van Ness*, 5 *Halst.* 102; *Hartshorne* v. *Hartshorne*, 1 *Green's Ch. R.* 356; *Woodhull* v. *Reid*, 1 *Harr.* 128; *Thompson* v. *Boyd*, 2 *Zab.* 548.

I do not understand that the notion of merger applies at all, as between mortgagor and mortgagee, or rather as between the mortgage interest and the equity of redemption. A lesser estate merges in a greater, but here the mortgage and the equity, considered as estates, are both in fee, and the mortgage the dominant one. The mortgage is extinguished, and perhaps may be said to merge where the mortgagor pays off the mortgage. But where the mortgage asserts its dominant power, either by a voluntary conveyance in consideration of the debt, or by the compulsory process of the Court of Chancery, upon what notion can it be said either to be merged or extinguished?

In fact, in such cases, is it not precisely the reverse? Is it not, then, the equity which is merged and extinguished in the mortgage interest? If this were not so would not the giving the release of the equity defeat the very

title it was meant to confirm by letting in intermediate encumbrancers? If an intermediate encumbrancer in case of no will should bring ejectment against the heir, could he not set up the mortgage? If the heir could, then why not the devisee? Can the heir say to the immediate encumbrancer that the mortgage is alive, and to the devisee that it is dead? The true rule is laid down in 2 *Powell on Devises* 155, "that though the equity of redemption subsequently acquired by foreclosure will not pass by the will, it is clear that the devise of the legal estate will not be affected by the mere acquisition of the equity of redemption by this or any other means." We are not to assume that he was ignorant of the law, and upon that assumption defeat his clear *intention*. If we assume that he did know that extinguishing the mortgage would defeat the devise, we must also assume that, from plain dictates of prudence, he intended to keep it alive to protect the devise and the title.

Courts have always declined to declare a mortgage extinguished by the mere uniting of the equity of redemption with the mortgage interest, when it can serve to protect the estate or any other honest purpose, and it is the wish of the holder so to consider it. Under this devise, the devisee, in my opinion, took at least the same legal interest in the land that the testator had at the date of the will, and that the judge did right in overruling the motion to non-suit.

The next question is, does the defendant show a better title? He claims through a deed, given in 1854, by the collector of arrears of taxes of the fifth ward of the city of Newark.

Among other objections to this title, the plaintiff urges that the collector had no authority to make this deed, and that it is consequently void. The collector sold by virtue of a tax warrant, issued by a justice of the peace, dated the 31st of October, 1850. If the warrant be void, the deed must be so also. By the 13th section of the act of

the 4th of March, 1841, supplementary to the Newark charter, it is provided that, notwithstanding any mistake in the name of the owner, or omission to name the real owner of lands in the city of Newark in assessing taxes, such assessment shall be valid, and the same may be proceeded against and sold in the manner prescribed by the supplement of the 2d March, 1839. In the case before us, the assessment was in the name of the estate of James Baldwin. James Baldwin died in 1841. It is a case, therefore, where the name of the real owner has been omitted in the assessment, and the proceedings to sell ought to have been under the act of 1839. But by the act of 1839 a justice of the peace or the collector of arrears of taxes had no jurisdiction of the matter. Indeed, the latter office had not then yet neeb created. By the act of 1839 the common council sold the land and executed a declaration of sale under their common seal, and the whole proceeding was different from the one before us. It is sought, by the defence, to justify this sale under the 3d, 5th, 6th and 8th sections of said supplement of March 4th, 1841, and under the act of 1839. But it is perfectly manifest that these sections embrace and give jurisdiction to the justice and power to the collector only in the ordinary cases of assessments in the names of the owners, and not in the exceptional cases of omitted or unknown owners.

The defendant also seeks to validate this sale under the 10th section of the act of March 13th, 1851, (*Pamph. Acts of* 1851, *p.* 235,) which provides, that in case of an omission to name the real owner, lands may be sold in the manner prescribed by the act of 1841. It is true that this act goes into effect immediately, and before the advertisement and sale by the collector, and before this deed was executed, but it was passed after the warrant was issued. When passed, the warrant was a nullity. This act looks to the future, not the past. There is nothing in it showing that it was intended to give vitality to past

void proceedings. The act of 1851, if it applied at all to such cases, left these proceedings where it found them. I am of opinion that the justice had no authority to issue this warrant, and that the warrant, consequently, could give the collector no authority to sell. The rule to show cause must be discharged.

CITED in *Duncan* v. *Smith*, 2 *Vr.* 329 ; *Lamb* v. *Cannon*, 9 *Vr.* 364.